IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| JUDY ANN SAUNDERS<br><br>Petitioner,<br><br>vs.<br><br>JO ANNE B. BARNHART, Commissioner,<br>Social Security Administration<br><br>Respondent. | **ORDER**<br><br>Case No. 2:03 CV 00303 DB<br>Judge Dee Benson |

Judy Ann Saunders appeals the decision of the Social Security Commissioner denying her application for disability insurance and supplemental security income benefits. Having considered the parties' briefs, the administrative record, and the relevant law, the Court AFFIRMS the Commissioner's decision.

*I.*

Petitioner is forty-eight years old, and has an eighth grade education as well as relevant past work experience as a book binder, upholstery cleaner, and customer service representative. Petitioner initially alleged that she became disabled on October 1, 1999. Admin. Rec. 12. At the time of the hearing, Petitioner amended the date of the onset of her disability to June 2, 2000. *Id.* Petitioner's disability claim was initially based on back pain, arthritis, bursitis, depression, and lung problems, *Id.* at 48, 52, 59, but ultimately her claim was only based on disorder of the spine and chronic obstructive pulmonary disease.

Petitioner visited Dr. John T. Dall, an orthopedist, on June 2, 2000 for reevaluation of low back pain which had worsened in the previous month. Admin. Rec. 124–27. While Dr. Dall was concerned about subclinical instability, he also indicated that "[t]here is some concern about

secondary gain issues including an attempt to gain disability." *Id.* at 125. Dr. Dall recommended that Petitioner undergo physical therapy. At her initial physical therapy evaluation with Brian Anderl, P.T., Petitioner was noted to have moderate muscle spasms throughout the paraspinal region with functional deficit. *Id.* at 93. However, Mr. Anderl stated that Petitioner was "hit and miss" for her appointments, and because of this, he had been unable to establish consistency in her therapy program. *Id.* at 102. Petitioner informed Dr. Dall that she did not think the therapy provided more than short-lived improvement. Following a CT scan and an unsuccessful epidural injection, Dr. Dall found Petitioner's chronic back pain to be the result of scar tissue and prescribed narcotic pain medications. *Id.* at 118. Dr. Dall described Petitioner as "very pleased" with the effects of pain medication when she visited him on October 5, 2000. *Id.* at 117.

In addition to seeking treatment for low back pain, Petitioner also visited hospital emergency rooms twice in the fall of 2000, complaining of difficulty breathing and chest pain. Admin. Rec. 101–04. During her visit on September 15, 2000, Petitioner was noted to be a smoker, diagnosed with emphysema, and prescribed pain medication. *Id.* at 101–02. During her visit on October 20, 2000, the emergency room physician indicated that Petitioner had run out of pain medications, which was the primary reason for her visit. *Id.* at 99. The emergency room physician stated that he was concerned about her narcotic use and "would not give her any narcotic medications . . . ." *Id.* at 100. The record thus indicates that although the Petitioner suffers from chest pain, her physicians are also concerned that she may have a potential drug addiction.

At the request of the Commissioner, Dr. Richard J. Ingebretsen examined Petitioner to determine the validity and seriousness of her impairments and their effect on her ability to return

to her former employment. Admin. Rec. 109–11. Dr. Ingebretsen's exam revealed that she had faint auscultation sounds, some loss of motion in her lower back, and chronic back pain requiring pain and anti-inflammatory medications. Otherwise, her examination was normal. *Id.* at 14. Dr. Martin J. Rubinowitz evaluated Petitioner's charts and found that although she had a history of back problems and chronic shortness of breath, she could perform a range of sedentary and light work. *Id.* at 128–35. Additionally, Dr. Keith M. Pearson reviewed Petitioner's charts and testified that Petitioner had various impairments, none of which met or equaled a listed impairment. *Id.* at 165–68. After reviewing Petitioner's records on August 1, 2001 and December 7, 2001, two State agency medical consultants also opined that Petitioner's medical conditions did not meet or equal any listed impairment. *Id.* at 136, 138. No other physician of record expressed an opinion as to whether Petitioner's impairments met or equaled a listed impairment.

The ALJ asked vocational expert, Dr. Orlando Rivera, to consider an individual of Petitioner's age, education, work experience, and with the same limitations and capabilities. Admin. Rec. 170–72. Dr. Rivera testified that such an individual could perform the Petitioner's past relevant work as a customer service representative. *Id.* at 173.

Petitioner applied for disability insurance on April 17, 2000, and on February 5, 2001, Petitioner protectively applied for supplemental income payments, alleging that she had been unable to work since June 2, 2000. The Commissioner denied her claim initially and upon reconsideration. Petitioner subsequently requested and obtained a hearing before an administrative law judge ("ALJ") who ruled on May 23, 2002, that Petitioner was not eligible for benefits. The Appeals Council denied Petitioner's request for review, making the ALJ's decision the Commissioner's final decision. *See* 42. U.S.C. 405(g); *Doyal v. Barnhart*, 331 F.3d 758, 759

3

(10th Cir. 2003).

In her appeal before this Court, Ms. Saunders argues that the ALJ erred in determining her condition was not equivalent to disabilities listed in the Regulations, that the ALJ improperly evaluated her credibility, and that the ALJ improperly found that she could perform her past relevant work .

*II.*

This Court reviews the Commissioner's decision only to determine whether its factual findings are supported by substantial evidence in the record and whether it applies the correct legal standards. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quotations and citation omitted). This Court is not free, however, to reweigh the evidence or substitute its discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214.

The Commissioner employs a five-step process in deciding whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The Commissioner determines 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant suffers from a severe impairment or combination of impairments; 3) whether the impairment is equivalent to a listed impairment; 4) whether the impairment prevents the claimant from performing the work she previously performed; and 5) whether the claimant remains capable of performing work other than her previous work. *Id.* The entire analysis need not be completed if one of the early steps in the analysis establishes a particular claimant is or is not disabled. *Id.*

Petitioner complains that the ALJ erred in finding that she did not suffer from a listed

impairment and that she therefore should have been found to be disabled at step three of the sequential analysis. Petitioner claims that she met the requirements of the listings for disorder of the spine and for chronic obstructive pulmonary disease.

Disorder of the spine, according to listing 1.4, requires objective evidence of a spinal disorder that compromises a nerve root or the spinal cord. 20 C.F.R. pt. 404, subpt. P, app1 § 1.04. A CT scan performed July 14, 2000 found no disc herniation or significant spinal stenosis. Admin. Rec. 94–95. Because the Petitioner's spinal condition has not resulted in a compromise of a nerve root or spinal cord, the ALJ's finding that Petitioner's spinal disorder neither met nor equaled a listed impairment is well supported by the consensus of medical opinion evidence as well as the medical findings.

Petitioner also maintains she qualifies as disabled under listing 3.02, which categorizes as disabled persons with chronic obstructive pulmonary disease, due to any cause, and supported by objective measurements from medical tests. 20 C.F.R. pt. 404, subpt. P, app1 § 3.02. However, Petitioner's pulmonary function tests on July 25, 2001 were well above the listing level. Admin. Rec. 112. Moreover, Petitioner's complaints that her symptoms have worsened have not been supported by objective medical evidence. When Petitioner went to the hospital emergency room complaining of exacerbated symptoms, tests revealed only mild respiratory impairment. Petitioner therefore has not demonstrated that she meets the listing in 3.02, and the ALJ did not err in so finding.

Additionally, Petitioner in her reply brief argues for the first time that the ALJ failed to give proper weight to the findings and opinions of her treating physicians. However, Petitioner failed to show how the opinions of her treating physicians discredit the ALJ's determination that her impairments do not meet or equal an impairment listed in the Regulations. Furthermore, this

Court will not consider an argument made for the first time in a reply brief. This rule is supported by the local rules governing motions practice as well as by basic considerations of fairness. *See* DUCivR 7-1(b)(3) (limiting the subject matter of reply memoranda to rebuttal of matters raised in opposition memoranda). A contrary rule would take from one party the opportunity to test the factual assertions and legal arguments of the other, and deprives this Court of argument on both sides of an issue. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

Petitioner also argues that the ALJ's finding that "claimant's allegations regarding her limitations are not totally credible," Admin. Rec. 17, was inadequate. As support for this conclusion, the ALJ considered multiple factors, including Dr. Dall's determination that Petitioner's conditions can only be treated through symptom management, Dr. Dall's statement concerning Petitioner's pursuit of disability benefits and her cessation of work ten months before the onset of allegedly disabling symptoms, and Petitioner's lack of compliance with medical treatment.[1] Admin. Rec. 15–16; *see Shepard v. Apfel*, 184 F.3d 1196, 1202 (10th Cir. 1999) (finding the ALJ's credibility determination was supported by claimant's failure to show up for treatment); *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) (indicating that a claimant's prior work record can be considered in evaluating credibility; therefore, the ALJ did not err in considering that claimant quit work long before the alleged onset of disability); *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 744, 777) (10th Cir. 1990) (finding the Commissioner properly discarded claimant's subjective complaints due to the consulting physician's suspicion that claimant was "malingering"). The record contains additional factors which would support

---

[1] Mr. Anderl testified that Petitioner had not kept her physical therapy appointments. Admin. Rec. 92–93. Also, Petitioner continued to smoke cigarettes contrary to medical advice. Additionally, Dr. Dall reported significant gaps in treatment. Petitioner did not return to Dr. Dall for ten months after her scheduled three month follow-up appointment on February 12, 2001. Admin. Rec. 113–14.

the ALJ's finding that Petitioner's testimony was not fully credible. Petitioner has a poor and inconsistent earnings record with frequent changes of employers and occupations. Admin. Rec. 43, 60; see *Bean*, 77 F.3d at 1213 (a claimant's prior work record can be considered in evaluating a claimant's credibility).

This Court is highly deferential to an ALJ's credibility assessment. *See Williams v. Barnhart*, 2006 U.S. App. LEXIS 10708, 8-9 (10th Cir. 2006) (applying a highly deferential standard of review to credibility determinations, which are "peculiarly within the province of the finder of fact and . . . will not [be] upset . . . when supported by substantial evidence.") (citing *Diaz*, 898 F.2d at 777); *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992) ("Credibility is the province of the ALJ."). The ALJ reasonably explained the basis for his credibility finding, which is well supported by the record. The ALJ's evaluation of Petitioner's credibility will not be disturbed by this Court.

Finally, Petitioner argues that at step four of the sequential analysis, the ALJ improperly found that Petitioner could perform her past relevant work. Pl.'s Br. 37–41. Specifically, Petitioner suggests that the ALJ did not make sufficient findings in reaching his determination of her residual functioning capacity ("RFC") to do light work. However, the ALJ's RFC determination is supported by Dr. Rabinowitz's RFC assessment, which is uncontradicted by other medical evidence. Also, the ALJ's conclusion that Petitioner could perform her past relevant work as typically performed in the national economy is supported by impartial vocational expert testimony. Thus, the ALJ properly found that Petitioner was not disabled at step four of the sequential evaluation process.

*III.*

The Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act is AFFIRMED.

IT IS SO ORDERED.

Dated this 5th day of June, 2006.

Dee Benson
United States District Court Judge